**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ABIRA MEDICAL LABORATORIES, LLC d/b/a GENESIS DIAGNOSTICS,<br><br>Plaintiff,<br><br>v.<br><br>CAPROCK HEALTH PLANS, 90 DEGREE BENEFITS, AND THEIR AFFILIATES, ABC COMPANIES 1-00 AND JOHN DOES 1-100,<br><br>Defendants. | Civil Action No. 23-04252 (GC) (JTQ)<br><br>**OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon the Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6) filed by Defendant HPHG, LLC d/b/a 90 Degree Benefits d/b/a Caprock Health Plans.[1] (ECF No. 28.) Plaintiff opposed, and Defendant replied. (ECF Nos. 32 & 36.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's motion is **GRANTED**.

---

[1] Defendant claims that it was improperly named in the pleadings "as separate entities Caprock Health Plans and 90 Degree Benefits." (ECF No. 28-1 at 6.) Plaintiff does not dispute this contention, nor does it affect the Court's analysis.

I.  **BACKGROUND**

    A.  **Factual Background**

This is one of more than forty cases that Plaintiff Abira Medical Laboratories, LLC, has filed in the United States District Court for the District of New Jersey or had removed here from the Superior Court of New Jersey since June 2023.  In each of these cases, Plaintiff sues "health insurance companies, third-party administrators, health and welfare funds, or . . . self-insured employers" based on their alleged failure to pay Plaintiff "for laboratory testing of specimen, including but not limited to COVID-19 tests, which [Plaintiff] performed for the insureds/claimants."  (ECF No. 10 ¶ 1.)

Plaintiff "is a domestic limited liability company organized under the laws of the State of New Jersey."  (*Id.* ¶ 11.)  Plaintiff "operated a licensed medical testing laboratory business" that "performed clinical laboratory, toxicology, pharmacy, genetics, and addiction rehabilitation testing services on specimen," including "COVID-19 testing."  (*Id.* ¶¶ 36-38.)  Defendant is incorporated and has its principal place of business in Texas.  (*Id.* ¶ 13; ECF No. 1 at 6 ¶ 19.)

Plaintiff alleges that its claims "originate[d] when . . . the insureds/claimants submitted specimen via molecular swabs" and "blood samples . . . at physicians' offices or at a facility, and they were shipped to the laboratory."  (ECF No. 10 ¶ 44.)  The "laboratory tested the specimens, provided the results to the appointed recipients, and submitted the bill, typically called a claim, to the Defendants for payment."  (*Id.*)  "Pursuant to the Benefits clauses or provisions of the insurance contracts, Defendants were supposed to pay . . . the claims, pursuant to Abira's fee schedule or the insurer's fee schedule, or typically, negotiate a reasonable fee."  (*Id.* ¶¶ 44, 47.)  The total amount of payments said to be due is $103,522.00.  (*Id.* ¶ 9.)  Plaintiff alleges that there are "tens of claims underlying this action," but does not identify in its Amended Complaint the individual insureds/claimants, the type of health insurance plans under which the insureds/claimants were

covered, or any specific provisions in any plan that entitles the insureds/claimants to benefits from Defendant. Nevertheless, Plaintiff alleges that pursuant to 29 C.F.R. § 2560.503-1(b)(4), Plaintiff "is an 'authorized representative' acting on behalf of the insureds/claimants for any necessary legal action." (*Id.* ¶ 4.) It further alleges that "the insureds/claimants designated [Plaintiff] as their assignee, as evidenced by the insureds/claimants providing their insurance information to [Plaintiff], for the purpose of [Plaintiff] filing claims with the Defendants for payment of lab tests." (*Id.* ¶ 5.)

### B. Procedural History

This case was removed to this Court from the Superior Court of New Jersey, Mercer County, Law Division, based on federal question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332. (*See* ECF No. 1.) On October 25, 2023, Plaintiff filed the Amended Complaint. (ECF No. 10.) On February 2, 2024, Defendant moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6). (ECF No. 28.) Plaintiff opposed on March 5, and Defendant replied on March 15. (ECF Nos. 32 & 36.)

The Amended Complaint asserts eight causes of action against Defendant and other unidentified "affiliates" as well as unnamed companies and persons: Count One for breach of contract; Count Two for breach of the implied covenant of good faith and fair dealing; Count Three for fraudulent misrepresentation; Count Four for negligent misrepresentation; Count Five for promissory estoppel; Count Six for equitable estoppel; Count Seven for quantum meruit/unjust enrichment; and Count Eight for violations of the Families First Coronavirus Response Act (FFCRA) and the Coronavirus Aid, Relief, Economic Security (CARES) Act. (ECF No. 10 ¶¶ 70-146.) In addition, the Amended Complaint does not assert a standalone cause of action under the Employee Retirement Income Security Act (ERISA) but states that "where ERISA is applicable, the causes of action are brought pursuant to" 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3) of ERISA.

(ECF No. 10 ¶ 69; *see also id.* ¶ 3 ("To the extent that the contracts relevant to the underlying claims are governed by ERISA, this action is brought to: 1) recover benefits pursuant to [29] U.S.C. § 1132(a)(1)(B), and 2) for equitable relief, pursuant to [29] U.S.C. § 1132(a)(3).").)

## II.   LEGAL STANDARD

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dirs. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

## III.   DISCUSSION

Defendant argues that Plaintiff, as an alleged assignee of the underlying insureds, does not have derivative standing to pursue its claims because the Amended Complaint is predicated on

employee health plans that contain a valid anti-assignment clause.[2]  The Court agrees.

Typically, "standing to sue under ERISA is 'limited to participants and beneficiaries.'" *Prestige Inst. for Plastic Surgery, P.C. o/b/o S.A. v. Horizon Blue Cross Blue Shield of N.J.*, Civ. No. 20-3733, 2021 WL 4206323, at *3 (D.N.J. Sept. 16, 2021) (quoting *Univ. Spine Ctr. v. Anthem Blue Cross Blue Shield*, Civ. No. 18-2912, 2018 WL 6567702, at *2 (D.N.J. Dec. 13, 2018)). Nevertheless, "[h]ealthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary," *N. Jersey Brain & Spine Ctr.*, 801 F.3d at 372, so long as the ERISA plan does not include a valid anti-assignment clause, *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018). "[A]nti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable." *Id.* at 453; *Neurosurgical Assocs. of NJ, P.C. v. Aetna, Inc.*, Civ. No. 17-13210, 2019 WL 851280, at *3 (D.N.J. Feb. 22, 2019) ("[T]he *American Orthopedic* decision is consistent with a long line of decisions from this district that have denied standing after finding a valid anti-assignment clause in an ERISA-governed health insurance plan.").

Here, in support of its Motion to Dismiss, Defendant has submitted a sworn certification from its President identifying the employee benefit plans administered by Defendant that are at issue in this case. (*See* ECF No. 28-2.) Of the 16 plans, 15 are "self-funded employee welfare benefit plans established and maintained by the participant employers" and are therefore governed by ERISA, while the remaining plan is a non-ERISA governmental medical plan. (*Id.* ¶ 4; ECF No. 28-1 at 8.) All of the plans at issue contain the following provision regarding the assignment of benefits and the right to sue:

---

[2]  Defendant's challenge to Plaintiff's derivative standing "involves a merits-based determination" that is non-jurisdictional and therefore "properly filed under Rule 12(b)(6)" instead of Rule 12(b)(1). *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.1 (3d Cir. 2015).

5

>Benefits for medical expenses covered under this Plan may be assigned by a Participant to the Provider . . . .
>
>. . . .
>
>No Participant shall at any time, either during the time in which he or she is a Participant in the Plan, or following his or her termination as a Participant, in any manner, have any right to assign his or her right to sue to recover benefits under the Plan, to enforce rights due under the Plan or to any other causes of action which he or she may have against the Plan or its fiduciaries.
>
>[(*See* ECF Nos. 28-3 through 28-18.)[3]]

Anti-assignment provisions found to be valid in this Circuit generally prohibit the assignment of benefits. *Compare id.*, *with Am. Orthopedic*, 890 F.3d at 448 (evaluating an anti-assignment clause that stated, "[t]he right of a Member to receive benefit payments under this Program is personal to the Member and is *not assignable* in whole or in part to any person, Hospital, or other entity" (emphasis in original)); *Atl. Shore Surgical Assocs., PC v. Aetna Life Ins. Co.*, Civ. No. 20-15622, 2021 4148149, at *3 (D.N.J. Apr. 12, 2021) ("Anthem . . . members: You may not assign your benefits directly to your out-of-network provider."); *Minisohn Chiropractic & Acupuncture Ctr., LLC v. Horizon Blue Cross Blue Shield of N.J.*, Civ. No. 23-01341, 2024 WL 4025957, at *5 (D.N.J. Aug. 30, 2024) ("[N]o amount payable for benefits here under shall be subject in any matter to alienation by assignment of any kind. Any attempt to assign any such amount whether present or hereafter payable, shall be void."). The above provision, however, generally permits insureds to assign their benefits under the plans, but prohibits the insureds from assigning their right to sue to recover those benefits.

---

[3]   Defendant attaches the relevant excerpts of the plans to its Motion to Dismiss. (*See* ECF Nos. 28-2 through 28-18.) Plaintiff does not dispute their authenticity. For the reasons discussed herein, the Court finds that the documents are integral to and expressly referenced in the Amended Complaint, and the Court will consider them in ruling on Defendant's Motion to Dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Plaintiff contends that an assignment of benefits implicitly includes the right to sue and argues that the Court should not distinguish "between a patient's assignment of right to receive benefits and the provider's right to sue to enforce that right." (ECF No. 32 at 8.) Plaintiff relies on *North Jersey Brain & Spine Center*, where the Third Circuit held that "as a matter of federal common law, when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a)." 801 F.3d at 372. The court further concluded that an "assignment of the right to payment logically entails the right to sue for non-payment" because "the assignment is only as good as payment if the provider can enforce it." *Id.* at 372-73.

Plaintiff's reliance on *North Jersey Brain & Spine Center* is misplaced. The issue there was "whether a patient's explicit assignment of payment of insurance benefits to her healthcare provider, *without direct reference to the right to file suit*, is sufficient to give the provider standing to sue for those benefits under ERISA § 502(a)." *N. Jersey Brain & Spine Ctr.*, 801 F.3d at 370 (emphasis added). As the Third Circuit later clarified, *North Jersey Brain & Spine Center* "merely held—in the absence of an anti-assignment clause—that 'when a patient assigns payment of insurance benefits to a healthcare provider, [the] provider gains standing to sue for that payment.'" *Am. Orthopedic*, 890 F.3d at 450 (quoting *N. Jersey Brain & Spine Ctr.*, 801 F.3d at 372). Because *North Jersey Brain & Spine Center* did not "address the effect or enforceability of an anti-assignment clause, . . . it has little bearing here." *Id.*; *see also Minisohn*, 2024 WL 4025957, at *6 (rejecting a similar argument when determining the validity of an anti-assignment provision). Plaintiff's exact argument was also rejected in *Lourdes Specialty Hospital of Southern New Jersey v. H.D. Supply, Inc. Health and Welfare Program*, Civ. No. 17-11527, 2018 WL 3814277, at *3-4 (D.N.J. Aug. 10, 2018). The court in *Lourdes* considered an anti-assignment provision that was nearly identical to the anti-assignment provision at issue in this case. The provision allowed

members to assign their right to benefits but prohibited them from assigning their right to sue. *Id.* at *3. The court dismissed plaintiff's claims for lack of derivative standing, finding that the "clear and unambiguous anti-assignment clause regarding the right to sue" was enforceable despite the "general proposition that the right to sue follows an assignment of the right to benefits" as articulated in *North Jersey Brain & Spine Center*. *Id.* at *4.

Plaintiff has cited no authority to the contrary. Nor does Plaintiff dispute the authenticity of the plan documents attached to Defendant's Motion to Dismiss. Rather, Plaintiff objects to the Court's reliance on documents outside the pleadings on a motion to dismiss. (ECF No. 32 at 9-10.) But the "insurance contracts or plans" are referenced throughout the Amended Complaint, and Plaintiff asserts that it has derivative standing "to collect from Defendants, the payment/reimbursement due to the insureds/claimants, under the benefits sections of the respective insurance contracts/plans." (*See, e.g.*, ECF No. 10 ¶¶ 22, 25, 72, 74, 88, 97, 106, 131.) Thus, the Court finds that the plan documents are "integral to or explicitly relied upon in the complaint" and "may be considered without converting the motion [to dismiss] into one for summary judgment."[4] *In re Burlington*, 114 F.3d at 1426 (alterations in original). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Princeton Neurological Surgery, P.C. v. Aetna, Inc.*, Civ. No. 22-1414, 2023 WL 2307425, at *3 (D.N.J. Feb. 28, 2023) (quoting *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)); *see also Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.*, Civ. No. 21-09056, 2022 WL 3500416, at *1 n.3 (D.N.J. Aug. 18, 2022) (considering employee health plan documents attached to a motion to dismiss for a lack of derivative standing "because Plaintiffs' claims are based off these documents and because

---

[4] Plaintiff also concedes that "there may be arguments that . . . the plan documents are [integral]" to the pleadings." (ECF No. 32 at 10.)

Plaintiffs explicitly rely on them in their Amended Complaint").

Plaintiff next argues that it has standing to pursue these claims despite the anti-assignment clauses because Plaintiff is an "authorized representative of the insureds/claimants pursuant to 29 C.F.R. § 2650.503-1(b)(4)" and because it obtained a power of attorney from the insureds. (ECF No. 32 at 9-10.) In support, Plaintiff has submitted a COVID-19 Test Requisition Form signed by one of the insureds in this matter, which contains a "Patient Consent Authorization" clause at the bottom of the form. (ECF No. 32-1 at 3.) The Authorization Clause provides that the patient "appoint[s Plaintiff] . . . as my true and lawful attorney-in-fact for the purpose of . . . litigation or other remedies in accordance with the benefits and rights under my health plan and in accordance with federal or state law." (*Id.*) Plaintiff argues that the anti-assignment clauses in the plans do not apply to its standing as an authorized representative and attorney-in-fact, citing *American Orthopedic*, 890 F.3d at 455.

Neither argument prevails. First, courts have "repeatedly held" that standing under 29 C.F.R. § 2560.503-1(b)(4) "applies only to internal claims and appeals, not to federal lawsuits brought after the plan member exhausts those appeals." *Cooperman v. Horizon Blue Cross Blue Shield of N.J.*, Civ. No. 19-19225, 2020 WL 5422801, at *3 (D.N.J. Sept. 10, 2020) (citations omitted); *Atl. Shore Surgical Assocs.*, 2021 WL 4148149, at *3 n.5 (finding that the plaintiff lacked derivative standing due to a plan's anti-assignment clause even though the plaintiff claimed to be an "authorized representative" under 29 C.F.R. § 2560.503-1(b)(4)).[5] Thus, Plaintiff's alleged

---

[5] This view is shared by courts outside this District. *See, e.g.*, *OSF Healthcare Sys. v. SEIU Healthcare IL Pers. Assistants Health Plan*, 671 F. Supp. 3d 888, 891-92 (N.D. Ill. 2023) ("[I]n the regulations governing ERISA, 29 C.F.R. § 2560.503-1(b)(4) expressly allows authorized representatives like OSF to file internal claims and appeals but, importantly, does not confer standing to authorized representatives to pursue civil actions against a plan."); *Park Ave. Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield*, 2021 WL 665045, at *7 (S.D.N.Y. Feb. 19, 2021) ("[A] medical provider's status as an Authorized Representative does not . . . independently provide a cause of action pursuant to ERISA.").

status as an "authorized representative" does not confer derivative standing to sue in federal court.

Nor, as a matter of law, can Plaintiff serve as an attorney-in-fact under the New Jersey Revised Durable Power of Attorney Act (RDPAA) because it is neither an individual nor a banking institution. *See* N.J. Stat. Ann. § 46:2B-8.2(a) (permitting a principal to "authorize another individual or individuals or a qualified bank" as an attorney-in-fact); *Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, Civ. No. 19-8783, 2020 WL 1983693, at *7-8 (D.N.J. Apr. 27, 2020) (finding that the plaintiff medical providers with powers-of-attorney from their patients lacked standing to assert claims under plans with anti-assignment provisions because "medical practices cannot act as attorneys-in-fact under the RDPAA"); *Gotham*, 2022 WL 3500416, at *4 (same). Although the Third Circuit in *American Orthopedic* recognized that anti-assignment clauses do not necessarily apply to powers of attorney, Plaintiff cannot be an attorney-in-fact as a matter of law. *See* 890 F.3d at 454-55. Therefore, that portion of the *American Orthopedic* decision is inapposite.[6]

In sum, to the extent Plaintiff seeks to pursue a cause of action under ERISA pursuant to the ERISA-governed plans, all of Plaintiff's claims must be dismissed because the plans contain "a clear and unambiguous anti-assignment clause regarding assignment of the right to sue." *Lourdes*, 2018 WL 3814277, at *2 (upholding the validity of an anti-assignment clause that is identical to the clause at issue in this case); *Am. Orthopedic*, 890 F.3d at 447-78 ("[A]nti-assignment clauses in ERISA-governed health insurance plans are enforceable . . . ."); *Plastic*

---

[6] The Court also agrees with Defendant that the alleged power of attorney submitted by Plaintiff is invalid because it was not "duly signed and acknowledged" by a notary public. *See* N.J. Stat. Ann. § 46:2B-8.9. Even if the alleged powers of attorney were valid and Plaintiff could serve as the insureds' attorney-in-fact, a power of attorney would only give Plaintiff the authority to act as the individual insured's agent and assert a claim *on his or her behalf*. *See Am. Orthopedic*, 890 F.3d at 455. A power of attorney does not transfer the principal's interest in a legal claim to the agent or confer the agent with standing to sue in the agent's own right. *See id.* (citing *Titus v. Wallick*, 306 U.S. 282, 289-90 (1939)).

*Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 226, 235 (3d Cir. 2020) (holding that ERISA's "broad express preemption provision" in § 514(a) preempts state-law claims that are "predicated on the plan or plan administration, *e.g.*, claims for benefits due under a plan, . . . where the plan 'is a critical factor in establishing liability'; and . . . claims that 'involve construction of [the] plan[],' or 'require interpreting the plan's terms'" (citations omitted)).[7]

Next, because the non-ERISA plan also contains "a clear and unambiguous anti-assignment clause regarding assignment of the right to sue" and all of Plaintiff's state-law claims are predicated on "insurance contracts or plans," Plaintiff's state-law claims must be dismissed as to that plan as well. *Gotham*, 2022 WL 3500416, at *8 (dismissing the plaintiff's state law claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and quantum meruit arising from non-ERISA plans because the non-ERISA plans contained anti-assignment provisions). (ECF No. 10 ¶¶ 74, 81-82, 88, 97, 106, 117, 131.)

Finally, Plaintiff's lack of derivative standing is also fatal to its claims under the FFCRA and CARES Act. Plaintiff cites *Open MRI & Imaging of RP Vestibular Diagnostics, P.A. v. Cigna Health & Life Insurance Company* to argue that "plan participants – and health providers – could sue under ERISA, after a health insurer denied coverage for their COVID-19 testing" pursuant to

---

[7] Plaintiff has not plausibly alleged that its state law claims are predicated on any agreement that the parties reached separately or independently from the plans. Plaintiff's allegations that "Defendants sprinkled payments to [Plaintiff]," and that Defendant's "representatives . . . advised [Plaintiff] that claims submitted were processed and paid, thus impressing upon [Plaintiff] that they would pay . . . for the outstanding and subsequent lab services," are insufficient to plausibly allege an implied contract, fraudulent or negligent misrepresentation, promissory or equitable estoppel, or unjust enrichment. (ECF No. 10 ¶ 118.) *See Abira Medical Lab'ys, LLC v. York Ins. Servs. Grp.*, Civ. No. 23-03525, 2024 WL 2746101, at *4 (D.N.J. May 29, 2024) (finding that "[w]ithout preauthorization, Plaintiff's generalized allegation that Defendants paid some claims at some point does not create a plausible basis for the Court to presume that the parties' 'course of dealing' satisfies the elements for a contract-based claim," nor to presume that there "was ever a misrepresentation or a clear and definite promise on which it was reasonable for Plaintiff to rely" (citations omitted)).

the FFCRA and CARES Act. Civ. No. 20-10345, 2022 WL 1567797, at *6 (D.N.J. May 18, 2022). (ECF No. 10 ¶ 138.) But the court in *Open MRI* found that the plaintiff healthcare provider had sufficiently alleged a valid assignment of the "*rights* and benefits under the Plan" from the plan participants before ruling that the provider, "on behalf of patient assignors," could sue under ERISA for unpaid COVID-19 testing. *Id.* at *1-7 (emphasis added). Here, because Plaintiff lacks derivative standing to sue due to an anti-assignment clause, it cannot sue on behalf of any "patient assignors" under ERISA for unpaid COVID-19 testing. *See id.* And neither statute creates a private cause of action against an insurer. *See, e.g., Thompson v. U.S. Dep't of Treasury Internal Revenue Serv.*, Civ. No. 23-03103, 2023 WL 4744751, at *2 (D.N.J. July 25, 2023) ("Courts in this district, as well as the other districts around the country, agree that there is no implied private right of action for individuals under the CARES Act."); *Genesis Lab'y Mgmt. LLC v. United Health Grp., Inc.*, Civ. No. 21-12057, 2023 WL 2387400, at *3 (D.N.J. Mar. 6, 2023) (same).

Accordingly, Plaintiff's Amended Complaint is dismissed without prejudice. *See Gotham*, 2022 WL 3500416, at *8.

### IV. CONCLUSION

For the reasons set forth above, and other good cause shown, Defendant's Motion to Dismiss (ECF No. 12) is **GRANTED**. An appropriate Order follows.

Dated: September 30, 2024

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE